UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUSIC AND ENTERTAINMENT RIGHTS LICENSING INDEPENDENT NETWORK LIMITED,<br><br>         Plaintiff,<br>   v.<br><br>TRILLER GROUP INC.; TRILLER HOLD CO LLC; and DOES 1-10,<br><br>         Defendant. | CASE NO. CV-1:25-cv-2560<br><br>**COMPLAINT** |

1. Plaintiff Music and Entertainment Rights Licensing Independent Network Limited ("Plaintiff" or "Merlin"), by and through its undersigned attorneys, as and for its Complaint against Defendants Triller Group Inc. and Triller Hold Co LLC (collectively "Defendants" or "Triller"), alleges as follows:

## PARTIES

2. Merlin is a private company limited by shares organized under the laws of Ireland, with its principal place of business in London, England.

3. Upon information and belief, Triller Group Inc. is a Delaware corporation with a principal place of business in Los Angeles, California.

4. Upon information and belief, Triller Group Inc. is a successor-in-interest to Triller Inc. and/or Triller Corp.

5. Upon information and belief, Defendant Triller Hold Co LLC is a Delaware limited liability company with a principal place of business in Los Angeles, California.

6. Defendants Does 1 through 10, inclusive, are other parties who are responsible for and/or have contributed to the wrongful actions described herein, and are liable to Merlin on that

basis. The true names, whether corporate, individual, or otherwise, of Defendants 1 through 10, inclusive, are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Merlin is a citizen of a foreign country and Defendants are citizens of the States of Delaware and California, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants pursuant to New York Civil Practice Law and Rules § 302 because Defendants have entered into contracts providing for jurisdiction in the State of New York, have engaged in acts in violation of Merlin's rights in the State of New York, have been and are causing injury to Merlin in the State of New York, and regularly transact and/or solicit business in the State of New York and derive substantial revenue therefrom.

9. In particular, this Court has personal jurisdiction over Defendants because Triller Inc. is party to the License Agreement (*see infra* ¶ 13) at issue in this lawsuit (as discussed below), which contains a forum selection clause wherein Triller Inc. consents, and voluntarily submits, to the jurisdiction of this Court. The clause provides:

> Governing Law. This Agreement, including any Exhibits attached hereto shall be governed by and construed in accordance with the laws of the State of New York without reference to conflicts of law principles under such laws. The Parties hereby irrevocably and unconditionally consent to submit to the jurisdiction of the federal and state courts of New York in connection with any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby (and the parties agree not to commence any action, suit or proceeding relating hereto except in

such courts). The parties hereby irrevocably and unconditionally waive any objection which they may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in such courts and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS

11. Merlin is a digital rights music licensing partner for independent record labels, distributors, and other music rights holders around the world.

12. Defendants operate a video-sharing and social networking platform, also named "Triller" (the "Triller Platform"), wherein users share videos with one another, some of which feature music protected by the intellectual property laws of various jurisdictions.

**The True Up Payment**

13. On July 8, 2020, Triller Inc. entered into a Recorded Music License Agreement (the "License Agreement") with Merlin.

14. The License Agreement generally allowed Triller to incorporate certain sound recordings owned and/or controlled by Merlin on clips featured and shared on the Triller Platform during the term of the agreement in exchange for a flat fee.

15. The License Agreement also included a most favored nation clause (the "MFN Clause") which provides in part:

> 1.3 If, during the Term, Triller enters into a More Favourable Agreement, Triller shall notify Merlin in writing and the provisions of 1.5 below shall apply.

3

> 1.4 If during the Term Merlin reasonably believes that Triller has entered into a More Favourable Agreement, Merlin may serve notice on Triller in writing (an "MFN Notice") under this clause.
>
> 1.5. If either Triller serves (or is required to serve) notice on Merlin pursuant to 1.3 above, then Triller shall:
>
> 1.5.1 offer such incremental payment to Merlin as may be required to put Merlin into the position in which it would have been, had the Key Terms of this Agreement been as favourable to Merlin as the Key Terms of the relevant More Favourable Agreement are to the relevant Other Label (which incremental payment shall, for the avoidance of doubt, if required in relation to the Key Terms referred to in 1.2.2 or 1.2.4 above be adjusted to reflect Merlin's and the relevant Other Label's relative market shares in the relevant part(s) of the Territory during the relevant period (and for these purposes Merlin shall be deemed to have a market share of 15% until such time that Triller is able to track and confirm Merlin's actual on-service market share (and provided such on-service market share for the purposes of 1.2.4 shall be deemed not to be less than 15%));

16. The "Key Terms" are defined by the License Agreement as:

    > 1.2.1 terms and formulas for calculating all fees payable in respect of the Service;
    >
    > 1.2.2 amounts of advance payments, delivery or set up fees (or other so called "flat" fees, including without limitation the License Fee), and/or minimum revenue guarantees of any nature or de facto minimum revenue guarantees or any minimum monthly payments (e.g. via a guaranteed "pro rata share"), in each instance on a relative market share basis;
    >
    > 1.2.3 the functionality of the Service, including the duration of Clips and the duration of Triller Videos; and
    >
    > 1.2.4 terms in respect of any grants, issues, sales or disposals of equity or equitable interests (including without limitation the strike price, the exercise period and the number of Common Units subject of the Warrants).

17. On August, 29, 2022, a non-Merlin record label (the "Record Label") filed a civil action complaint (the "Complaint") in the Southern District of New York.

18. The Complaint alleged the existence of a license agreement between the Record Label and Triller (the "Record Label Agreement").

19. Triller did not provide Merlin with notice of the Record Label Agreement.

20. When Merlin became aware of the Record Label Agreement, Merlin sent Triller Inc. a letter (the "Notice Letter"), dated September 2, 2022, stating that the Record Label Agreement was a More Favourable Agreement as defined by the License Agreement and MFN Clause, and as such Triller Inc. was required to comply with the provisions set forth above. In particular, Triller Inc. was required to offer Merlin an incremental payment as set forth by provision 1.5.

21. Triller Inc. thereafter acknowledged the Notice Letter. The parties discussed the incremental payment owed under the License Agreement and the MFN Clause throughout the months of October and November, 2022. In the course of these conversations, the parties came to an understanding that Triller Inc. owed Merlin the sum of $2,550,000 USD (the "True Up Payment").

22. On December 1, 2022, Merlin sent defendant Triller Inc. an invoice, pursuant to the License Agreement and MFN Clause, demanding the True Up Payment in the amount of $2,550,000 USD, payable immediately. Triller Inc. did not remit the True Up Payment at this time.

23. Since that time, Merlin has followed up with Triller Inc. repeatedly regarding the outstanding True Up Payment. Triller Inc. has never disputed that the True Up Payment is owed to Merlin.

**The Warrant**

24. On August 3, 2020, also in connection with the License Agreement, Triller Hold Co LLC issued Merlin with a Warrant to Purchase Class B Common Units of Triller Hold Co LLC (the "Warrant"). Section 4(b) of the Warrant provides in relevant part:

> In the event of any … Change of Control Transaction … each Warrant shall, immediately after such … Change of Control Transaction … remain outstanding and shall thereafter, in lieu of or in addition to (as the case may be) the number of Warrant Units then exercisable under this Warrant, be exercisable for the kind and number of units or other securities or assets of the Company or of the successor Person resulting from such transaction to which the Holder would have been entitled upon such … Change of Control Transaction … if the Holder had exercised this Warrant in full immediately prior to the time of such … Change of Control Transaction … and acquired the applicable number of Warrant Units then issuable hereunder as a result of such exercise (without taking into account any limitations or restrictions on the exercisability of this Warrant); and, in such case, appropriate adjustment (in form and substance satisfactory to the Holder) shall be made with respect to the Holder's rights under this Warrant to insure that the provisions of this Section 4 hereof shall thereafter be applicable, as nearly as possible, to this Warrant in relation to any units, securities or assets thereafter acquirable upon exercise of this Warrant (including, in the case of any Change of Control Transaction or similar transaction in which the successor or purchasing Person is other than the Company, an immediate adjustment in the Exercise Price to the value per unit for the Class B Common Units reflected by the terms of such Change of Control Transaction or similar transaction, and a corresponding immediate adjustment to the number of Warrant Units acquirable upon exercise of this Warrant without regard to any limitations or restrictions on exercise, if the value so reflected is less than the Exercise Price in effect immediately prior to such Change of Control Transaction or similar transaction). The provisions of this Section 4(b) shall similarly apply to successive reorganizations, reclassifications, Change of Control Transactions or similar transactions. The Company shall not effect any such reorganization, reclassification, Change of Control Transaction or similar transaction unless, prior to the consummation thereof, the successor Person (if other than the Company) resulting from such reorganization, reclassification, Change of Control Transaction or similar transaction, shall assume, by written instrument substantially similar in form and substance to this Warrant and

       satisfactory to the Holder, the obligation to deliver to the Holder such units, securities or assets which, in accordance with the foregoing provisions, such Holder shall be entitled to receive upon exercise of this Warrant.

25. The Warrant further defines "Change of Control Transaction" to include "a consolidation or merger of the Company with or into any other corporation or corporations in which the holder of the Company's outstanding units immediately before such consolidation or merger do not, immediately after such consolidation or merger, retain units representing a majority of the voting power of the surviving corporation or such consolidation or merger."

26. On or about October 15, 2025, "Triller Corp." merged (the "Merger") with AGBA Group Holding Limited ("AGBA") resulting in the surviving entity, Triller Group Inc. Upon information and belief, Triller Corp. is a successor to Triller Inc., and is (or was) a wholly-owned subsidiary of Triller Hold Co LLC.

27. Upon information and belief, this merger was one wherein Triller Hold Co. LLC merged with another corporation and the holder of Triller Hold Co LLC's outstanding units immediately before the merger did not, immediately after the merger, retain units representing a majority of the voting power of the surviving corporation.

28. Triller, however, failed to comply with the terms of the Warrant, including by failing to confirm, in a written instrument, that the successor company to Triller Hold Co LLC would assume the obligation to deliver to Merlin such units, securities or assets that Merlin is entitled to pursuant to the Warrant.

29. Merlin raised its concerns regarding the Warrant in late October, 2024. Merlin has still not received information regarding how Triller intends to handle the matter. Merlin was promised new warrants in November, and Triller has yet to deliver those warrants.

30. To date Triller has not disputed that the recent merger qualifies as a Change of Control Transaction pursuant to the warrant.

31. On December 18, 2024, Merlin sent Defendants a demand letter setting forth the facts outlined in this complaint, and demanding confirmation in writing that Defendants would comply with the terms of the Warrant and pay Defendants' outstanding debt to Merlin pursuant to the License Agreement and MFN clause. On January 10, 2025, Merlin sent a second demand letter reiterating the same. To date Merlin has received no response to either letter.

## COUNT I

## BREACH OF CONTRACT

32. Merlin hereby adopts and realleges the allegations in Paragraph 1 through 31, which are hereby incorporated by reference in full.

33. Merlin and Triller Inc., for good consideration, entered into the License Agreement, which is a valid and binding contract.

34. The License Agreement and MFN Clause required Triller Inc. to notify Merlin if it entered into any More Favourable Agreement. It further provided that Merlin could issue notice if Merlin reasonably believed Triller Inc. had entered into a More Favourable Agreement. Triller Inc. was then required to "offer such incremental payment to Merlin as may be required to put Merlin into the position in which it would have been, had the Key Terms of this Agreement been as favourable to Merlin as the Key Terms of the relevant More Favourable Agreement."

35. The Record Label Agreement constituted a More Favourable Agreement as defined by the License Agreement and the MFN clause.

36. Triller Inc. failed to issue notice of the Record Label Agreement to Merlin.

37. Merlin notified Triller Inc. that the Record Label Agreement was a More Favourable Agreement pursuant to the MFN Clause.

38. Triller Inc. acknowledged the notice, and through conversations with Merlin, came to a common understanding with Merlin that Merlin was owed an incremental payment of at least $2,550,000.

39. Triller Inc. has failed to pay this incremental payment.

40. Triller Inc.'s foregoing actions has thereby breached the License Agreement and MFN Clause contained therein. As a result, Merlin has been damaged in an amount to be determined at trial, but believed to be in excess of $2,550,000.

41. Triller Group Inc., as the successor-in-interest to Triller Inc., is liable for Triller Inc.'s breach.

42. As a result of the foregoing, Merlin seeks an award of direct and consequential damages, with all such amounts to be determined at trial, but in no event less than an amount within the jurisdiction of this Court, plus pre- and post-judgment interest.

43. Merlin has performed all obligations under the License Agreement.

44. All conditions precedent (if any) to Merlin's claim for relief in this action, have been performed or have occurred.

## COUNT II

## BREACH OF CONTRACT

45. Merlin hereby adopts and realleges the allegations in Paragraph 1 through 31, which are hereby incorporated by reference in full.

46. Merlin and Defendant Triller Hold Co. LLC, for good consideration, entered into the Warrant, which is a valid and binding contract.

9

47. The Warrant required that in the event of any Change of Control Transaction, defined by the Warrant, Defendant Triller Hold Co. LLC or its successor to confirm by written instrument that the successor organization would assume the obligation to deliver to Merlin such units, securities or assets that Merlin is entitled to pursuant to the Warrant.

48. The Merger, which was completed on or about October 15, 2024, constituted a Change of Control Transaction as defined by the warrant.

49. Triller Hold Co LLC and/or its successor organization, Triller Group Inc., failed to provide a written instrument confirming that Triller Hold Co LLC's successor organization would assume the obligation to deliver to Merlin such units, securities or assets that Merlin is entitled to pursuant to the Warrant.

50. Defendants' foregoing actions constitute material breach of the Warrant. As a result, Merlin has been damaged in an amount to be determined at trial.

51. As a result of the foregoing, Merlin seeks an award of direct and consequential damages, with all such amounts to be determined at trial, but in no event less than an amount within the jurisdiction of this Court, plus pre- and post-judgment interest.

52. Merlin has performed all obligations under the Warrant.

53. All conditions precedent (if any) to Merlin's claim for relief in this action, have been performed or have occurred.

## PRAYER FOR RELIEF

54. WHEREFORE, Merlin respectfully requests that the Court enter judgment:

    a. On the First Cause of Action, awarding Merlin damages in an amount to be determined at trial, but believed to be in excess of $2,550,000, together with pre- and post-judgment interest thereon;

    b. On the Second Cause of Action, ordering Triller Hold Co LLC and/or its successor organization, Triller Group Inc., to specifically perform its obligations;

    c. On the Second Cause of Action, alternatively, awarding Merlin damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

    d. Awarding Merlin such other and further relief as the Court deems equitable and proper.

## **DEMAND FOR A JURY TRIAL**

Merlin demands a trial by jury pursuant to FED. R. C. P. 38.

DATED: New York, New York  
           March 27, 2025

Mitchell Silberberg & Knupp LLP

By: */s/ Bradley J. Mullins*  
    Bradley J. Mullins  
    2049 Century Park East, 18th Floor  
    Los Angeles, CA  90067-3120  
    Telephone: (310) 312-2000  
    Facsimile: (310) 312-3100  
    Attorneys for Plaintiff  
    Music and Entertainment Rights Licensing Independent Network Limited